John A. CELONA et al.

v.

The RHODE ISLAND ETHICS COMMISSION et al.

No. 86–335 M.P.

Supreme Court of Rhode Island.

July 21, 1988.

John F. McDonough, North Providence, for plaintiffs.

John M. Roney, Roney & Labinger, Providence, H. Jefferson Melish, Wakefield, for defendants.

## OPINION

SHEA, Justice.

This case is before the Supreme Court following our granting of a petition for the issuance of a writ of certiorari to review a judgment of the Superior Court. That judgment affirmed a decision of the Rhode Island Conflict of Interest Commission (the commission)[1] in which the commission found that the petitioners, while serving as members of the North Providence Town Council, had violated provisions of the State conflict-of-interest law. We affirm.

The petitioners, John A. Celona, Robert A. DiStefano, Ann M. McQueeney, Joseph A. Refino, Joseph E. Rendine, and John W. Rhude, brought an action in the Superior Court against the then-State of Rhode Island Conflict of Interest Commission and its individual members.[2]

The petitioners alleged that the commission had erred in finding that petitioners had violated the State conflict-of-interest law in the following way. While serving as members of the North Providence Town Council, petitioners passed, unanimously and without discussion, a resolution requesting the General Assembly to amend

§ 2–1–4 of article 2 of the North Providence Town Charter to read as follows:

"All members of the Council shall be compensated at an annual salary of $1500 and shall receive $100 each per month for expenses unless changed by ordinance. No council may increase its compensation or expense allowance during a new term of office nor for the next term if the ordinance is passed after the last day on which nomination papers must be filed for the primary prior to the general election at which council members are to be elected. Any increase in compensation shall not exceed 10% of the then current compensation for any term of office."

This proposed amendment altered § 2–1–4 of the town charter by eliminating a provision that expressly provided that council members would "receive no reimbursement for expenses."

Prior to the March 3, 1981 council meeting at which the formal resolution was passed, the council met to discuss the proposed resolution at an unannounced and unpublished Sunday morning meeting. Shortly after the passage of the formal resolution, the requested bill was introduced in the House of Representatives by the town's legislative delegation. It was passed by the Legislature and became law on May 26, 1981. Before passage by the House of Representatives, an amendment was offered by one North Providence legislator that would have added the following language to the proposed act:

"A voucher which itemizes the expenses for which claim is made for payment and certifies as to the accuracy of the expenses incurred and the amount thereof, and provided that the responsible authority who authorizes the expenditure certifies as to the necessity for incurring such expense."

This proposed change in the offered amendment would bring the amendment into com-

---

1. During the pendency of this litigation the Rhode Island Conflict of Interest Commission, one of the original respondents, went out of existence and its successor, the Rhode Island Ethics Commission, was substituted as a party-respondent.

2. Edward L. Casey, Jr., Marie M. D'Amico, Juanita M. Handy, Angelo R. Iannitelli, Jr., Mariam R. Plitt, and William F. Shields.

pliance with § 23–1–2 of article 23 of the North Providence Charter. The motion to amend was tabled by the House by a vote of thirty-nine to thirty-eight.

It is clear from the record that the council was aware not only of the unfavorable public perception of this activity on their part but also, more importantly, of the provisions of G.L. 1956 (1984 Reenactment) § 36–14–5 requiring a filing of a report with the commission before taking the action that could create a conflict of interest.[3]

After the amendment became law, the town treasurer issued $100 monthly checks to petitioners without requiring any voucher or record of expenses from the council members. One petitioner testified that he paid income taxes on the monthly payment. He also testified that all council members were union members and received health and retirement benefits from the town.

At the time the amendment was passed and at present two other sections of the town charter, §§ 23–1–1 and 23–1–2 read as follows:

"§ 23–1–1. *Compensation of employees.*—

All persons employed by the town on the basis of an annual salary whether elected or appointed, shall be paid on a pro-rated basis for the period during which they actually rendered services to the town together with any accumulated fringe benefits to which they may be entitled."

"§ 23–1–2. *Expenses of employees.*—

No persons employed in the town government in any capacity shall incur, nor shall he claim reimbursement for, any expenses in the performance of his duties unless they are necessary and proper. The town treasurer shall reimburse an employee for expenses incurred in connection with the performance of his duties only if the employee submits to him a voucher which itemizes the expenses for which claim is made for payment and certifies as to the accuracy of the expenses incurred and the amount thereof, and provided that the responsible authority who authorized the expenditure certifies as to the necessity for incurring such expense.

No person employed in the town government shall be paid for expenses in the performance of his duties on the basis of a regular periodic or other fixed expense allowance."

Complaints were filed with the commission, alleging that each of these petitioners had violated the conflict of interest law. Hearings were held, and the commission rendered its decision. It found that petitioners had "knowingly and willfully violated *Rhode Island General Laws*, § 36–14–4(a), 36–14–4(d), [36–14–4](e)(1), and 36–14–5 and Commission Regulations 1009, 1014, 1015, 1011.[4] The petitioners

---

**3.** General Laws 1956 (1984 Reenactment) § 36–14–5 provides in part:

"Any person * * * who, in the discharge of his official duties, is or may be required to take an action, make a decision or refrain therefrom that will or can reasonably be expected to directly result in an economic benefit to said person * * * shall, before taking any such action or refraining therefrom:

(1) Prepare a written statement * * * describing the matter requiring action and the nature of the potential conflict * * * .

(2) Deliver a copy of the statement to the commission."

In 1981, Title 36, Chapter 14 was entitled "Conflict of Interest." Public Law 1987, ch. 195, § 3 changed the name of the statute to "Code of Ethics" and made several other changes in the statute. Due to the addition of a new provision in the statute § 36–14–5 became § 36–14–6.

**4.** Section 36–14–4(a) provides:

"No elected or appointed state or municipal official shall, while serving as such, have any

interest, financial or otherwise, direct or indirect, or engage in any business, employment transaction or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his duties or employment in the public interest and of his responsibilities as prescribed in the laws of this state, as defined in § 36–14–6."

Section 36–14–4(d) provides in part:

"No person enumerated in § 36–14–2 shall use in any way his public office or confidential information received through his holding any public office to obtain financial gain other than that provided by law, for himself * * * ."

Section 36–14–4(e)(1) provides:

"No person enumerated in § 36–14–2 or any business associate of such person unless otherwise provided by law:

(1) Shall represent himself or any other person or act as an expert witness before any state or municipal agency of which said per-

were ordered to cease and desist from accepting any further $100–monthly payments until after the next election and to reimburse the town for any payments received or, in the alternative pay a $3,000 fine.

In reaching its decision, the commission found that:

1. The expense allowance in the charter amendment was not a genuine expense allowance but rather was tantamount to additional compensation.

2. The council members were the only beneficiaries of the charter amendment.

3. The petitioners used their public office to pass the council resolution which set in motion the process by which the charter amendment would be made.

The petitioners appealed to the Superior Court under the provisions of G.L. 1956 (1984 Reenactment) § 42–35–15 of the Administrative Procedures Act. In due course the trial justice issued his written decision and entered judgment in which he affirmed the commission decision and order.

When on a petition for certiorari to this court we review a judgment of the Superior Court that has affirmed a decision of an administrative board or agency, this court examines the record to determine if there is evidence or reasonable inferences to be drawn from that evidence to support the findings of the tribunal whose decisions are being reviewed. *Guarino v. Department of Social Welfare*, 122 R.I. 583, 588–89, 410 A.2d 425, 428 (1980).

Our review of the record satisfies us that there is ample evidence to support the conclusions of the commission. In fact petitioners did not challenge the commission findings either in the Superior Court or in their arguments before this court.

It is clear that petitioners had a strong financial interest in bringing about the amendment to the town charter. They were the only individuals intended to benefit financially from the amendment. The petitioners disregarded the route authorized by the charter for increases in salary.

That route is to increase salaries by no more than 10 percent and only for the succeeding council. The amendment violated both of those limitations. The petitioners also deliberately countermanded the charter prohibition in § 23–1–2 against the payment of expenses in a fixed sum. The commission and the trial justice's findings that their actions violated § 36–14–4(a) of the conflict-of-interest law were supported by the evidence.

The petitioners argue that the fixed monthly expense payments do not constitute additional compensation. In doing so, they cite *In re Advisory Opinion to the House of Representatives*, 485 A.2d 550 (R.I. 1984), as authority. In that opinion we said that "[a]n allowance for expenses that a legislator incurs in the performance of his or her official duties is different from compensation or salary." *Id.* at 554. However, we also said that the reimbursement must be limited to expenses "*actually incurred* in the performance of official duties." *Id.* We advised the House of Representatives that to ensure that the proposed expense payments to legislators were not an unconstitutional increase in compensation, they should adopt legislative findings that the proposed payment plan was one of reimbursement and provide for an actual accounting of the expenses for which reimbursement would be claimed. That opinion provides no support for petitioners' position in this case.

The argument of petitioners that they could not be in conflict of interest because they lacked the power to increase their income directly must fail also. The only way a legislative charter can be amended is by legislative action. That action is always initiated by a request from the city or town council in the form of a resolution usually containing the exact language of the amendment requested. That is what occurred in this case. The amendment that finally passed was the one requested verbatim. The amendment would never have

son is a member or is employed, elected or engaged except in the performance of his official duties."

Due to the changes in the statute instituted under P.L. 1987, ch. 195, § 3, § 36–14–4 became § 36–14–5. *See* footnote 3, *supra.*

been enacted if it had not been requested by the council.

Furthermore, there is no language in the conflict-of-interest statute that limits violations to circumstances where a public official renders a decision that results in financial gain. Rather, § 36–14–6[5] provides that a conflict of interest exists if the public official "has reason to believe or expect that he [or she] * * * will derive a direct monetary gain * * * by reason of his [or her] official activity."

The narrow issue at the heart of this case is whether the actions of these petitioners in passing the resolution constituted "official activity." An "official act" is "[o]ne done by an officer in his official capacity under color and by virtue of his office." Black's Law Dictionary 978 (5th Ed. 1979). There can be no question that in passing the formal resolution requesting the amendment, these petitioners engaged in official activity within the provisions of the conflict-of-interest statute.[6]

Finally, it is quite clear that the petitioners violated the requirements of § 36–14–5, which provides for the filing of a report with the commission when the institution of an action can reasonably be expected to result in profit to the official taking that action. The activities of these petitioners appear to conflict with the policy expressed in the statute that public officials must not improperly use their offices for personal gain. *See Rhode Island Higher Education Assistance Authority v. Rhode Island Conflict of Interest Commission*, 505 A.2d 427, 429 (R.I. 1986); *In re Advisory Opinion to the Governor*, 504 A.2d 456, 459 (R.I. 1986).

For these reasons the petition for a writ of certiorari is denied, the writ heretofore issued is quashed, the judgment of the Superior Court is affirmed, and the papers of the case are remanded to the Superior Court with our decision endorsed thereon.

---

**5.** Due to changes in the statute instituted under P.L. 1987, ch. 195, § 3, § 36–14–6 became § 36–14–7. *See* footnote 3, *supra*.

**6.** Nothing stated in this opinion should be deemed or construed to limit the right of any person, public official or otherwise to petition the General Assembly for redress of grievances or for other purposes as guaranteed by article 1, section 21 of the Constitution of Rhode Island and by the First Amendment to the Constitution of the United States.