[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on an appeal by the petitioners from a decision of the Zoning Board of Review of the Town of West Greenwich ("zoning board" or "board") granting the application of respondents Ralph and Amy Pratt for a special exception to allow them to operate an animal hospital on the subject property. This Court has jurisdiction pursuant to R.I. Gen. Laws § 45-24-20.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On August 20, 1993, respondents Dr. Amy Pratt and Dr. Ralph Pratt ("applicants") filed an application for a special exception to the West Greenwich zoning ordinance which would allow them to operate an animal hospital at 15 Victory Highway. Article II, § 1.B.5 of the town's zoning ordinance lists "animal hospital" among the uses authorized for a special exception in a Rural Farming Residential District such as that in which the subject property is located. The zoning ordinance also allows for special exceptions to be granted in such zones for golf courses, government buildings, hospitals, rest homes, cemeteries and multi-family dwellings.
On September 14, 1993, the zoning board held a public hearing on the application. The board had before it the following written evidence: (1) the Planning Board's recommendation of approval; (2) the Conservation Commission's recommendation in support of the application; (3) an engineering report by W-S Engineering 
Associates Civil Engineers, concluding the existing septic system would be sufficient; and (4) a letter of objection to the application from Mr. and Mrs. Clark Marciezyk, expressing concern over the possibility of barking dogs disturbing the peace.
In addition, the board heard the oral testimony of the applicants, who explained their plans for renovating the existing building, the operation of the facility, and the procedures for cleaning cages and disposing of medical waste. The owner of the subject property, Robert Studley, testified relative to the distance of neighboring wells to the septic system of the proposed facility. Kevin Breene, who owns the driveway used by several neighbors to access their property, including the subject property, testified in favor of the application and outlined the past business uses of the property. Plaintiffs Luke Sepe, Carl Passarelli and Barbara Passarelli testified in opposition to the application, expressing concerns about barking dogs, increased traffic and the effects of the proposed use on their water quality.
On September 22, 1993, the board issued a written decision granting the special exception. The board found "that the applicant has met all the requirements for the granting of a special exception, namely, that the public convenience and welfare will be substantially served; the proposed use will be in harmony with the general purpose and intent of the Zoning Ordinance; and the proposed use will not result in or create conditions that will be inimical to the public health, safety, morals, and general welfare of the community." Those conclusions were based upon the following determinations and compliance with the conditions set forth at the hearing as noted below:
"1. The proposed animal hospital facility would only accommodate boarding animals associated with and during hospitalization. There will be no general boarding of animals, no kennel and no runs on the premises. Consequently, any possible noise from barking dogs will be at a minimum.
2. Commercial boarding or breeding of animals shall be prohibited thereby ensuring that neighbors are not disturbed by heavy traffic and barking dogs.
3. Any and all medical waste shall be required to be removed by a licensed commercial hauler according to all state regulations relating to the disposal of medical waste, thereby eliminating any possible threat to the groundwater.
4. The animal hospital facility shall be air-conditioned thereby ensuring that neighbors will not be exposed to any barking dogs during the summer months.
5. The questions relating to the existing ISDS such as location, condition and capacity for use as a veterinary office, have been adequately addressed by W-S Engineering Associates. The Building Inspector shall confirm these conclusions with the Department of Environmental Management before issuing a permit.
6. The Zoning Board concurs with the Planning Board's observation that the proposed use, a small-scale veterinary office with one examination room and office, is appropriate for this site. The site has adequate parking and access, the use proposed is one of low density, and the hours of operation will be normal business hours except for emergency situations. There will be no adverse impact on the surrounding neighborhood and the public convenience and general welfare will be served."
Plaintiffs appeal this decision, alleging (1) that the record does not contain substantial evidence which justifies the decision; and (2) the hearing was not fair and impartial.
STANDARD OF REVIEW
Review of Zoning Appeals
Appeals of zoning board decisions are governed by R.I. Gen. Laws § 45-24-20, which provides:
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The Superior Court, in reviewing an action of a zoning board, must examine the entire record to determine whether "substantial evidence" exists to support the board's findings. Toohey v.Kilday, 415 A.2d 732, 735 (R.I. 1980). Substantial evidence means "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion," and means an amount more than a scintilla but less than a preponderance. Apostolou v.Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-825 (1978).
Special Exception Relief
When applying for a grant of a special exception, an applicant must show preliminarily that the relief sought is reasonably necessary for the convenience and welfare of the public. Salve Regina v. Zoning Board of Review, 594 A.2d 878, 880 (R.I. 1991). The West Greenwich Zoning Ordinance codifies this principle in Article I, § 6.C.2, which directs the board, when considering an application for a special exception, to determine whether:
 (a) the public convenience and welfare will be substantially served; (b) it will be in harmony with the general purpose and intent of this ordinance; and (c) it will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community.
Subsection (a) of Article I, § 6.C.2, the "public convenience and welfare" pre-condition, "will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare." SalveRegina, supra, 594 A.2d at 880. A board may not deny a special exception because of the applicants' failure to prove a community need for the facility. Id. In Salve Regina, the court allowed a special exception for a 20-person dormitory. To say such a facility was needed by the city of Newport would be stretching credulity. The court allowed the special exception, however, because the applicants were able to show that it would not harm the public health, safety, morals and welfare. According to theSalve Regina court, therefore, evidence that satisfies subsection (a) also will meet the requirements of subsection (c) of Article I, § 6.C.2.
To satisfy subsection (b), the applicants must show that the proposed use will be in harmony with the general purpose and intent of the ordinance. Article I, § 1 of the ordinance includes as its purpose the promotion of public health, safety, morals and general welfare; lessening congestion, preventing overcrowding; and conserving the value of buildings and encouraging the most appropriate use of the land.
Accordingly, if the zoning board had before it more than a scintilla of evidence that the proposed use would be in harmony with the ordinance and would not be inimical to the public health, safety, morals and general welfare, all three requirements of Article I, § 6.C.2 of the town's zoning ordinance would be met. The board then would be within its authority to grant the special exception. See Apostolou, supra, 120 R.I. at 508, 388 A.2d at 824-825.
DISCUSSION
Substantial Evidence Exists in the Record to Support the Board'sDecision
Petitioners first contend that the record does not contain substantial evidence to support the granting of a special exception. They argue that there was no evidence to support the board's conclusion that there would be no adverse impact on the surrounding neighborhood, that there would be no significant traffic increase, and that the proposed use would not be out of character with the existing neighborhood.
The Planning Board's recommendation of approval found that the proposed use was appropriate for the site and that there was adequate parking for the low density use proposed. The board conditioned its approval on the following facts and conditions: (1) The facility only would board animals during hospitalization; (2) there would be no commercial boarding or breeding; (3) medical waste would be disposed of properly; (4) a site plan noting the location of wells and septic systems on the subject property and neighboring lots would be submitted; and (5) zoning board approval would be withheld until questions about existing ISDS were investigated by an engineer. Tr. at 4-5.
Dr. Amy Pratt testified, relative to conditions 1-3 set by the planning board, that only hospitalized animals would be boarded (Tr. at 9); that there would be no commercial boarding or breeding (Tr. at 9); and that medical waste would be hauled away by a licensed carrier (Tr. at 10).
Planning Board conditions 4 and 5 were met by the submission of a map and report by W-S Engineering Associates Civil Engineers, showing the location of the septic system and wells in the area and finding the septic system sufficient for the proposed use. Tr. at 16-17. The evidence of the map was supported by the testimony of Robert Studley, owner of the subject property. He testified that his well, which is the closest of the neighboring wells to the subject septic system, is one hundred five (105) feet away from it.
The board also had before it a statement from the town's Conservation Commission, finding "no major problems or foreseeable negative environmental impacts on the part of the suggested project." Tr. at 6. That finding came after the commission discussed that a business previously had been located at the site; that the waste removal system would be contracted out; that the septic system usage would be less than a household with the possibility of its being upgraded after DEM review; that expansion plans were modest and limited; and that noise and visual levels would be relatively quiet and conforming to general standards. Tr. at 6.
The Passarellis testified that they did not want their peace and quiet disturbed by barking dogs. They also feared that their well would be affected by its proximity to the septic system of the proposed animal hospital. Tr. at 8.
Dr. Amy Pratt addressed the concern about barking dogs when she testified that the dogs would be inside, with the windows shut, and there would be no outside runs. Tr. at 9. She also said the facility would be air-conditioned (Tr. at 22), and that the dogs that are there at night probably would be post-operative or too sick to bark much. Tr. at 12.
Luke Sepe also testified about his concern that barking dogs would disturb the peace. Tr. at 12. He testified that at a Park Avenue veterinary facility barking dogs did present a problem. Tr. at 12-13. Dr. Amy Pratt countered that the Park Avenue facility was bigger and had boarded dogs. Tr. at 13.
Additionally, Dr. Amy Pratt testified that medical waste, including needles, syringes, and X-ray processing materials would be double-bagged and picked up by a licensed company. "The only thing that would go down the drain would be normal household things or bactericidal hand soaps that you would use in a surgical scrub." Tr. at 11. She said cages are usually lined with newspaper which, if soiled, is taken out and put in the trash, and that the cages are washed with a spray bottle of disinfectant and paper towels and that the paper towels go in the trash, not down the drain. Tr. at 11-12.
Dr. Amy Pratt testified that she would be the only veterinarian on staff in the beginning (Tr. at 18). She further stated that because it was small facility, there would probably be only two or three people there at a time (Tr. at 19).
Kevin Breene, who owns the common driveway, testified about the historical business uses of the subject property. He stated that the property had been the site of a business that sold chainsaws in the 1970s, and that, more recently, the state used it as an office during the reconstruction of Route 102. He estimated that about seven or eight persons were there constantly, joined by construction workers (Tr. at 20).
The Court is satisfied, after a review of the record, that the board had before it substantial evidence to support its decision. The record is replete with evidence to support the conclusion that use of the subject property as a small animal hospital would not be inimical to, but in fact would promote, public health, safety and welfare and would not compromise or be out of character with the existing neighborhood.
The Board's Hearing Was Fair and Impartial
Plaintiffs further contend that the decision of the board was arbitrary and capricious because the public hearing was not fair and impartial. They allege procedural unfairness in the questioning of one of the applicants and imply the existence of a conflict of interest on the part of one of the witnesses for the applicants that could have influenced the board.
Petitioners' first argue that the leading questions of board member Dr. Fish to Dr. Amy Pratt "eliminated any need for her to fill in any facts herself." Petitioners' Memorandum of Law at 7. The following exchange demonstrates the type of questioning to which plaintiffs object:
Dr. Fish: Obviously, you are running a medical hospital, you're not running a kennel for boarding dogs, so therefore the number of dogs you would have staying over is minimal. Correct? These would be post-operative dogs for one day?
Dr. Amy Pratt Probably two or three days at the maximum.
Dr. Fish And these dogs would not be going out in an outside run. Correct? They would be maintained inside the building, therefore the barking would be of minimal effect as any neighbor having their dog within the house. Correct?
Dr. Amy Pratt Exactly.
Dr. Fish And the windows would be maintained shut.
Dr. Amy Pratt Yes.
Dr. Fish And the building would be secure. So, you're not having a kennel where you would have outside runs where the dogs would be outside running and barking.
Dr. Amy Pratt Exactly. I don't believe in outside runs.
Dr. Fish They would be maintained within the building itself.
Dr. Amy Pratt Uhhuh, and they'd be there strictly for medical purposes; one or two nights depending on how ill they would be.
Dr. Fish When you look at the hours of operation of this clinic, it would be daytime, correct?
Dr. Amy Pratt There might be evening hours till 7:00 one or two nights a week.
Dr. Fish Or if there were an emergency, so, the number of people coming and going at night would be minimum to zero, correct?
Dr. Amy Pratt Yes.
Dr. Fish As far as the septic system goes, obviously, dogs do not use a bathroom.
Dr. Amy Pratt No.
Dr. Fish So, it would just be for you and your husband to use the toilet or whatever.
Dr. Amy Pratt And a technician.
Tr. at 9.
While several of Dr. Fish's initial questions are leading, that is, suggesting the answers to the questions, Dr. Amy Pratt's answers are not always an acquiescence any implied suggestion. At times she gives the expected one-word answer; at times she embellishes; and at times she gives an unsuggested answer.
While the Court recognizes the leading nature of these questions, it does so mindful of the fact that zoning boards are not required to observe strictly either the rules of evidence or the formality that ordinarily applies in judicial proceedings.Hopf v. Zoning Board of Newport, 102 R.I. 275, 230 A.2d 420
(1967). Many of the suggested answers in this series of questions, as well as Dr. Fish's questions relative to medical waste disposal (Tr. at 10), are a restatement of evidence already before the board through the Planning Board and Conservation Board recommendations. Furthermore, some of the questions also reflect Dr. Fish's own expertise as a physician, and a board may consider factors within the knowledge of its members. Toohey,
415 A.2d at 737.
The latitude afforded the board in matters of judicial formality "is limited, however, by a fundamental requirement that such hearings be fair and impartial, and in the course thereof such boards may not refuse arbitrarily to receive and consider material evidence on the issues being tried." Hopf, 102 R.I. at 286, 230 A.2d at 426, (quoting Lumb v. Zoning Board of Review,91 R.I. 498, 502, 165 A.2d 504, 506 (1960)). The remonstrants at the public hearing were given ample opportunity to present evidence and question the applicants. See Tr. at 8, 10-12, 19, 23-24. In fact, the only evidence presented by the remonstrants was their unsupported concern that their peace would be disturbed by barking dogs and that their water would be affected by the animal hospital's septic system. They presented only their own lay opinions and no expert testimony to support their claims.
Petitioners further assert that the hearing was tainted by an appearance of impropriety because Kevin Breene, who testified as an abutter in support of the proposed use, is a town councilman. In support of their assertion, petitioners cite R.I. Gen. Law §36-14-1: ". . . public officials . . . must . . . avoid the appearance of impropriety and not use their position for private gain or advantage." Petitioners concede that there is no allegation or record evidence to suggest that Mr. Breene committed any wrong.
In discussing the ethics law, the Supreme Court has held that "[t]he record must persuade us that such an official action as will invoke that statutory dictate occurred. . . . `We find from an examination of this statutory language . . . a consistent indication that all that is required of an official is theavoidance of any official action over a particular matter that represents the source of conflict.' (Emphasis added.)" DiPretev. Morsilli, 635 A.2d 1155, 1161 (R.I. 1994) (quoting In reAdvisory Opinion to the Governor, 504 A.2d 456, 461 (R.I. 1986)). An official act is "[o]ne done by an officer in his official capacity under color and by virtue of his office."Celona v. Rhode Island Ethics Commission, 544 A.2d 582, 586 (R.I. 1988).
Here, Mr. Breene was not acting in his official capacity as a councilman, but as an abutter. There is no evidence of impropriety. Mr. Breene had an interest in supporting the proposed use of neighboring property which he considered superior to other potential uses of that abutting land. To characterize his testimony as an appearance of impropriety that compromised the fairness of the zoning board hearing would be tantamount to depriving him, as a public official, of his rights as a private citizen to preserve and protect his land.
CONCLUSION
The Court is satisfied from a reading of the certified record that the board conducted a full, fair and impartial hearing, and that it did not refuse arbitrarily to receive and consider material evidence. After a review of the record, the Court finds substantial evidence to support the decision of the board, and that the decision was neither arbitrary nor capricious so as to prejudice petitioners' rights. Accordingly, the September 22, 1993 decision of the West Greenwich Zoning Board is hereby affirmed.
Counsel shall prepare and submit to the Court forthwith an appropriate form of order and judgment.