Thomas A. DiLUGLIO

v.

RHODE ISLAND ETHICS COMMISSION.

No. 97–330–M.P.

Supreme Court of Rhode Island.

March 26, 1999.

Patricia Buckley; Joseph A. Kelly, Providence, for Plaintiff.

Martin F. Healy, Colleen A. Brown, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This is a petition for certiorari concerning a former legislator's alleged violation of G.L. 1956 § 36–14–5(e),[1] the so-called revolving-door legislation. The petitioner, Thomas A. DiLuglio, a former state senator, asks us to reverse a Superior Court judgment that affirmed a decision and order of the Conflict of Interest Commission (former commission), a predecessor entity to the Rhode Island Ethics Commission (commission). The former commission assessed a civil penalty against the petitioner for representing a client before the Rhode Island State Senate (senate) within a year after leaving his public office where he served as a member of that body. The petitioner also challenges an interlocutory Superior Court order substituting the commission for its predecessor agency, the former commission, in petitioner's then-pending Superior Court appeal from the former commission's order that adjudged the petitioner a violator of § 36–14–5(e). We ordered the parties to show cause why we should not resolve this petition summarily. After reviewing the parties' legal submissions and listening to their oral arguments, we conclude that no such cause has been shown. Hence, we proceed to resolve this petition without further briefing and argument.

### Facts and Travel

The petitioner is an attorney who served as a member of the senate from January 1975 until July 1983. The Rhode Island Bottlers of Carbonated Beverages, also known as the Rhode Island Soft Drink Association (bottlers), retained petitioner shortly after he left the senate to represent the bottlers in their attempt to defeat a bill relating to litter control and recycling that was then pending before the Rhode Island General Assembly. On April 11, 1984, petitioner registered as a legislative agent. For petitioner's work in opposing the bill in question, the bottlers paid him approximately $5,300. The petitioner initiated telephone conferences with and prepared letters of information to state senators opposing the bill. The petitioner also attended senate sessions during April and May of 1984, wearing his lobbyist badge and arranged at least two dinners at a Providence restaurant between state senators and representatives of the soft-drink industry for the purpose of providing information in opposition to the bill. However, when the Senate Finance Committee convened to consider this bill, another attorney rather than petitioner appeared on behalf of the bottlers and submitted a formal presentation to the committee opposing the bill.

### Analysis

### I

### Substitution of the Commission for Its Predecessor

■ The 1987 legislation creating the commission, P.L.1987, ch. 195, § 1 (the act), repealed the enabling legislation of the former

---

1. General Laws 1956 § 36–14–5 provides, in pertinent part, as follows:

   "(e) No person subject to this code of ethics shall:

   "* * *

   "(2) Represent any other person before any state or municipal agency of which he or she is a member or by which he or she is employed.

   "* * *

   "(4) Shall engage in any of the activities prohibited by subsection (e)(1), (e)(2), or (e)(3) of this section for a period of one year after he or she has officially severed his or her position with said state or municipal agency; provided, however, that this prohibition shall not pertain to a matter of public record in a court of law."

commission. However, the act provided the commission with the authority to continue the former commission's work in progress as of its effective date (June 25, 1987). P.L. 1987, ch. 195, §§ 4, 6. For example, § 6 of the act authorized the commission to take action on any appeals from former commission orders pending before the Superior Court in the event that the court remanded any such case to the commission. We are of the opinion that such a provision necessarily contemplated that the commission would be able to enter an appearance as a party in such pending appeals, either to request such a remand or to respond to any request for a remand that any other party to the appeal may present to the court. In addition, § 4(d) of the act essentially transferred to the commission all complaints pending before the former commission for which it had closed the record in a formal hearing but had not yet rendered a final judgment as of the effective date of the act. Here, the former commission had "completed and formally closed the record in a formal hearing on the said complaint" prior to the act's effective date. *Id.* Nonetheless, because of petitioner's pending Superior Court appeal, the former commission had not yet rendered a final judgment on the complaint against petitioner. *See Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's Inc.,* 494 A.2d 897, 898 (R.I.1985) (holding that a judgment is final only when the parties have exhausted their respective right(s) to appeal or if no party to the action filed a timely appeal). As a result, § 4(d) authorized the commission to "adjudicate and/or dispose of the said complaint in accordance with the procedures established by this act."

Consistent with this legislative intent, the commission had enacted so-called Miscellaneous Regulation B, which established a substitution-of-party mechanism for the commission's staff to follow in substituting the commission for its predecessor agency in pending court cases involving the former

commission.[2] In construing provisions of the act, we have previously permitted the commission to substitute itself for the former commission as the party defendant. *See Celona v. Rhode Island Ethics Commission,* 544 A.2d 582, 583 n. 1 (R.I.1988) (acknowledging the substitution of the commission for the former commission during the pendency of the litigation). Indeed, any other interpretation would contravene the clear intent of §§ 4 and 6 of the act and would not promote the policies and obvious purposes behind the establishment of the commission as a successor entity to the former commission. *See, e.g., Kirby v. Planning Board of Review of Middletown,* 634 A.2d 285, 290 (R.I.1993) (recognizing that the Court will not interpret a legislative enactment literally when to do so would provide a result at odds with its legislative intent and that in this instance, the Court must interpret the enactment consistent with its policy or obvious purpose); *see also In re Advisory to the Governor (Judicial Nominating Commission),* 668 A.2d 1246, 1248 (R.I.1996) (stating that when interpreting a legislative enactment containing ambiguous language, the Court will construe the statutory provision in its entirety, attributing to the act the meaning most consistent with the policies and purposes of the legislation). Thus, we agree with the Superior Court that the Legislature intended for the commission to possess the authority to step into the shoes of the former commission, by substituting itself for that entity in any pending court cases involving the former commission, including any pending appeals to the Superior Court from orders entered by the former commission in contested cases.

## II

### Whether Petitioner Violated § 36–14–5(e) by Representing the Interests of His Client Before the Senate Within a Year of Leaving Office

■ The petitioner argues that the Superior Court incorrectly ruled that he represent-

---

2. Miscellaneous Regulation B provided that "[f]or all cases pending before the courts involving the [former commission], the [commission] shall forthwith be substituted as party in interest with counsel indicating that he or she appears for the [commission] in each of said proceedings." The petitioner never challenged the issu-

ance of this regulation under the procedures set forth in the Administrative Procedures Act, and therefore we presume it to be valid. *See Parkway Towers Associates v. Godfrey,* 688 A.2d 1289, 1293 (R.I.1997); *Lerner v. Gill,* 463 A.2d 1352, 1358 (R.I.1983).

ed the interests of his client, the bottlers, before the senate within a year after leaving public office. He contends that no evidence existed to show that he made a formal presentation on behalf of the bottlers before the senate. However, after analyzing petitioner's acts without the aid of the definition that is now set forth in § 36–14–2(13),[3] we conclude that petitioner "represented" the bottlers in violation of that term as it was used in § 36–14–5(e)(2) when petitioner engaged in the challenged conduct.

Specifically, the evidence here indicates that after agreeing to serve as a representative for the bottlers, petitioner (1) registered as a legislative agent; (2) attended senate sessions and appeared on the floor wearing his legislative lobbyist tag; (3) initiated telephone conferences with state senators relating to the litter control and recycling bill; (4) prepared letters of information that were distributed to senators in opposition to the bill at issue; (5) arranged at least two dinners between state senators and representatives of the soft-drink industry to provide information in opposition to the bill; and (6) admitted in his billings that he was serving as a legislative agent. Moreover, petitioner's employer reported the above-described conduct as lobbying activity in forms it filed with the Secretary of State.

These circumstances lead us to conclude that petitioner unlawfully represented the bottlers before the senate notwithstanding that he did not formally appear on behalf of the bottlers in making any committee presentations to the senate. As Black's Law Dictionary 1169 (5th ed.1979) states, "[t]o represent a person [or persons] is to stand in his [or their] place," or "to speak or act with authority on behalf of such person [or persons]." Contacting senators individually and as members of small groups, and performing other professional services in his capacity as a paid, registered lobbyist constituted represen-

sentation of petitioner's client's interests within the generally understood meaning of that term as it was used in the applicable statute. As recognized by the Superior Court, the interpretation suggested by petitioner—namely, that only a formal presentation to a senate committee would constitute representation before the senate—would open up a gaping hole in, and thereby defeat the intent of, the revolving-door legislation. For up to one year after leaving public service, this legislation prevents former government officials from improperly engaging in what amounts to "insider trading" on the benefits of their former government posts before the very public bodies of which they were members. The petitioner has not offered any convincing arguments concerning how and why the Legislature would have intended to limit the scope of § 36–14–5(e)(2) only to formal appearances before senate committees and to other such official presentations, and we are unable to posit any such reasons on our own why it would have intentionally drawn such a bootless distinction.

The petitioner also argues that the Superior Court's interpretation of the term "represents" impermissibly limits a former member of a government entity from associating with members of his or her former government agency, and/or divests the member of his or her right to petition a public official for redress. Nothing in the Superior Courts opinion, however, justifies such an expansive reading of its ruling. Considering that the bottlers hired the petitioner for the purpose of defeating a litter and recycling bill, and that the petitioner registered as a lobbyist for this purpose, initiated telephone conferences with state senators regarding the bill, attended senate sessions wearing his lobbyist badge, arranged dinners between state senators and his client, and prepared letters of information opposing the bill that were dis-

---

3. The definition of the term "represents" is set forth in § 36-14-2(13). Under this definition, adopted in 1987, an official represents the interests of another party before a state or municipal agency when the official is authorized to, and does in fact, act as another person's attorney-at-law or attorney-in-fact "in the presentation of evidence or arguments before that agency for the purpose of influencing the judgment of the agen-

cy in favor of that other person." Section 36-14-2(13). Because this definition of "represents" was not in effect when petitioner engaged in the challenged conduct (the term "represents" was undefined at that time), we do not apply it here. However, even if it had been in effect we would still hold that petitioner's actions were tantamount to representation before the senate according to the provisions in this definition.

tributed to state senators, both the former commission and the Superior Court were entitled to conclude that the petitioner represented the interests of his client before the senate within a year of leaving office as a state senator and that such conduct violated § 36–14–5(e). Neither the Superior Court's judgment nor the underlying order of the former commission impermissibly limited the petitioner's right to associate with members of the senate or to petition his or her representatives for relief. Rather, the effect of the ruling was merely to confirm that the petitioner, while acting as the representative of another party, was unable to lobby the very public body of which he was formerly a member within a year of leaving public service. Therefore, given the evidence of the petitioner's conduct on behalf of his client, both the commission and the reviewing court correctly ruled that the petitioner violated § 36–14–5(e).

## Conclusion

For the reasons set forth above, we deny the petition for certiorari, quash the writ previously granted, affirm the Superior Courts judgment, and remand the papers in this case to the Superior Court with our decision endorsed thereon.

Justice BOURCIER did not participate.