**SALVE REGINA COLLEGE**

v.

**ZONING BOARD OF REVIEW OF the CITY OF NEWPORT.**

No. 90–216–M.P.

Supreme Court of Rhode Island.

July 16, 1991.

Stephen A. Haire, Moore Virgadamo & Lynch, Ltd., Newport, for petitioner.

Joseph J. Nicholson, Jr., City Sol., Newport, for respondent.

## OPINION

KELLEHER, Justice.

This petition for certiorari was brought by Salve Regina College (Salve Regina) to review a Superior Court judgment that affirmed a decision of the Zoning Board of Review of the City of Newport (board). The board had denied Salve Regina's application for a special exception from the restrictions of a Newport zoning ordinance. Salve Regina appealed the decision to the Superior Court in accordance with G.L.1956 (1988 Reenactment) § 45–24–20. Later a Superior Court justice summarily affirmed the board's decision, with the terse comment that "there was substantial evidence before the board which supports the decision." Salve Regina timely filed a petition for issuance of a writ of certiorari, which we granted.

Salve Regina's parcel of property is designated as assessor's plat No. 36, lot No. 68, zone Residential R–60, and is located on the corner of Ruggles and Ochre Point Avenues. There are two existing structures on the lot. One, Ochre Lodge, is a 3,600–square–foot structure that is used as a dormitory and houses approximately thirty-eight students. The other structure, and the subject of this litigation, is a Queen Ann Victorian carriage house, a two-story structure of 1,450 square feet built circa 1890. Apparently the carriage house is currently vacant or is being used as a storage facility.

In the spring of 1988 Salve Regina filed an application with the board, seeking a special exception to permit the conversion of the carriage house to a dormitory or to multifamily use, both of which are allowed by special exception under the Newport zoning ordinance. The renovation plans submitted indicate that the size of the carriage house would not be increased but rather its interior would be renovated to allow for habitation by persons associated with Salve Regina. The renovated structure would house a maximum of twenty persons in eight bedrooms arranged in four two-bedroom suites. Each suite would be equipped with a kitchenette consisting of a cook top, a sink, and an undercounter refrigerator.

The Newport zoning ordinance states that the "R–60 Residential District is [in] an area of lower density residential development located in the southern portion of the City. The intent of this district * * * is to allow growth, but not at the expense of the established residential character of the district." Newport Zoning Ordinance § 1292.01 (1987). Section 1292.02(b) of the ordinance states: "The following uses are permitted [in an R–60 district] subject to the approval of a special exception from the Zoning Board of Review: (1) Multifamily dwellings converted from a structure existing prior to April 13, 1977[;] (2) Schools, colleges and universities including fraternity or sorority houses or dormitories for faculty or students."

Section 1266.04 of the zoning ordinance, the provision pertaining to the granting of special exceptions, provides:

"Special exceptions shall be granted only where the Zoning Board of Review finds

that the proposed use or the proposed extension or alteration of an existing use is in accord with the public convenience and welfare, after taking into account, where appropriate:

(a) The nature of the proposed site, including its size and shape and the proposed size, shape and arrangement of the structure;

(b) The resulting traffic patterns and adequacy of proposed off-street parking and loading;

(c) The nature of the surrounding area and the extent to which the proposed use or feature will be in harmony with the surrounding area;

(d) The proximity of dwellings, churches, schools, public buildings and other places of public gathering;

(e) The fire hazard resulting from the nature of the proposed buildings and uses and the proximity of existing buildings and uses;

(f) All standards contained in this Zoning Code; and

(g) The Master Plan for the City." ·

■ When applying for a grant of a special exception, an applicant must preliminarily show that the relief sought is reasonably necessary for the convenience and welfare of the public. *See* Newport Zoning Ordinance § 1266.02; *see also Nani v. Zoning Board of Review of Smithfield,* 104 R.I. 150, 156, 242 A.2d 403, 406 (1968). We have said, however, that a zoning board "may not deny granting a special exception to a permitted use on the ground that the applicant has failed to prove that there is a community need for its establishment." *Toohey v. Kilday,* 415 A.2d 732, 735 (R.I.1980); *Nani,* 104 R.I. at 156, 242 A.2d at 406. "The rule, [is] that satisfaction of a 'public convenience and welfare' pre-condition will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare." *Nani,* 104 R.I. at 156, 242 A.2d at 406.

■ The trial justice, when reviewing the action of a zoning board of review, "must examine the entire record to determine whether 'substantial' evidence exists to support the board's findings." *DeStefano v. Zoning Board of Review of Warwick,* 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). On certiorari to this court, we may neither examine the weight of the evidence, *A.T. & G., Inc. v. Zoning Board of Review of North Smithfield,* 113 R.I. 458, 461, 322 A.2d 294, 295 (1974), nor substitute our judgment for that of the zoning board's. *Mendonsa v. Corey,* 495 A.2d 257, 260 (R.I.1985). Rather our task is to apply the "some" or "any" evidence test and review the record to determine whether legally competent evidence exists to support the trial justice's findings. *DeStefano,* 122 R.I. at 245–46, 405 A.2d at 1170. Of course, this test is not satisfied by any evidence but only by that which we determine, from our review of the record, has probative force due to its competency and legality. *Thomson Methodist Church v. Zoning Board of Review of Pawtucket,* 99 R.I. 675, 681, 210 A.2d 138, 142 (1965).

Applying these standards to the controversy before us, we are of the opinion that there is little, if any, legally competent evidence that exists in the record that could possibly support the trial court's findings. We would first point out that many of the sparse factual determinations set forth in the board's written Findings and Decision are unsubstantiated by evidence in the record. After a thorough review of the entire record, however, we believe our discussion need only concern one aspect of the zoning proceedings, namely, the lay and expert testimony presented to the board. In total, four expert witnesses testified during the proceedings. Of these expert witnesses, three testified on behalf of Salve Regina: John Grovenor, recognized as an expert in the field of architecture; Dennis Taber, recognized as an expert traffic consultant; and Paul Hogan, recognized as a real estate expert. Only one person, Eugene Friedrich (Friedrich), testified in an expert capacity against Salve Regina. We would be remiss if we failed to point out that Friedrich was also the only neighboring property owner who attended the hearing to voice his strong objection to Salve Regina's request for a special exception.

■ Our concern focuses primarily on the board's recognition of Friedrich as an expert. We first note that the record indicates that Friedrich gave his opinion on numerous aspects of Salve Regina's proposal, including, but not limited to, the legal feasibility of the proposal in relation to Newport's zoning ordinance; the potential effect of Salve Regina's proposal on property values in the neighboring area; and the potential effect of Salve Regina's proposal on the parking and traffic conditions in the area at issue. Friedrich, however, modestly urged the board to recognize him as an expert solely in the area of traffic analysis. That the board did so, we believe, was an abuse of the board's discretion.

Following extended remarks by Friedrich concerning the reasons why Salve Regina's special exception should not be granted, which included a discussion of traffic conditions, the board's chairman stated: "Mr. Friedrich, it's a hard line to draw but it is pretty clear that lay witnesses are not allowed to testify as in the manner in which is considered to be one of an expert. * * * We will not hear any further opinions regarding traffic or parking." At that point Friedrich exclaimed: "Mr. Chairman, at this time I would like to be qualified as an expert. I am a rendered professional by the State of Rhode Island and by a number of other states in the United States. I have practiced my profession for 30 years and for 12 years I have done primarily traffic studies all over the United States and elsewhere in the world."

However, when the board chairman inquired whether Friedrich "testified before any bodies in this State with regard to traffic matters," Friedrich replied in the negative. Also when asked, "What is your expertise in regard to this State regarding traffic matters?" Friedrich replied, "I, having just moved here, I have none." Upon questioning by the board chairman, Friedrich also conceded that his scholastic degrees were obtained in the field of civil engineering and not traffic engineering. Throughout this line of questioning, the chairman repeatedly voiced his uncertainty concerning Friedrich's status as an expert.

This uncertainty is exemplified most clearly by the inconsistency inherent in the chairman's remarks when ruling on the matter: "With regard to traffic, I will rule that [Friedrich] is qualified as an expert. We will, however, pay attention not only to the facts of his inexperience in this State with regard to local traffic and parking, but also to the fact that he is an interested party."

On Friedrich's cross-examination, counsel for Salve Regina once again questioned the witness about his educational background and emphasized the fact that Friedrich's degree was in civil, not traffic, engineering with a specialty in building and construction. Friedrich conceded that "[m]ost of my traffic training was while I was serving for one year with a firm." Asked three times about the number of traffic courses he had taken on which he based his expertise, Friedrich eventually replied, "Probably half a dozen courses at some point." When Salve Regina's counsel asked Friedrich when he last testified about traffic, Friedrich replied, "The last time I testified on * * * a traffic matter was in Ethiopia. I can't remember when, maybe it was about ten years ago." The record also reveals that Friedrich admitted that he has never testified before a court regarding traffic matters, nor has he ever testified as an independent and impartial traffic expert before any board or commission of any federal, state, or municipal governmental body.

■ We think it quite obvious from our review of the record that Friedrich was not qualified to give expert opinion on the potential traffic problems associated with Salve Regina's renovation plans. Indeed, testimony elicited from Friedrich indicates that his opinions on traffic conditions in the area were formed not from an impartial and professional perspective but rather from the perspective of a neighboring property owner who was altogether vehemently opposed to any further student habitation in his own neighborhood. Furthermore, we believe the scant proof offered by Friedrich of his experience, professional training, and academic credentials relating to traffic matters was wholly insufficient to elevate

him to the status of expert in the field. We therefore conclude that the board improperly recognized Friedrich as an expert witness in traffic matters and therefore erroneously relied on what properly should have been categorized as lay testimony on the issue. At this time we would point out that the proposition has been well settled in this jurisdiction "since 1965 that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." *Toohey*, 415 A.2d at 737.

When the testimony offered by Friedrich on the issue of potential traffic problems is disregarded as incompetent and therefore lacking in probative value, the record is devoid of any legally competent evidence upon which the board could reasonably have based its finding that the "proposed use is not in accord with the public convenience safety and welfare." If, in reaching conclusions adverse to Salve Regina, the board relied upon its own knowledge of the area in question, the record fails to reveal the particular evidence upon which the board relied. We have said that "a board may consider probative factors within its knowledge in denying the relief sought or may acquire adequate knowledge through observation and inspection on a view." *Toohey*, 415 A.2d at 737. On appeal, however, " 'our decisions must necessarily reflect the record as we find it, uninfluenced by factors which may have been known to the board but of which we have no knowledge.' " *Id.* All other expert testimony adduced at the hearings buttressed Salve Regina's assertion that the proposed use was in accord with the intent of an R–60 zone and fully complied with the criteria set forth in § 1266.04 of Newport's zoning ordinance governing the granting of special exceptions.

Since the testimony offered by Friedrich on adverse traffic conditions was lacking in probative force and since the board had no other expert testimony or evidence in the record adverse to Salve Regina upon which

it could base its findings and conclusions, we hold that the trial justice erred in finding that the evidence was sufficient to support the board's determination. In light of the competent evidence adduced before the board, the board's denial of Salve Regina's request for a special exception constituted an abuse of discretion by the board and its findings were clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.

For the foregoing reasons Salve Regina's petition for certiorari is granted, the board's decision is quashed, and the records certified to this court are ordered returned to the board with our decision granting the special exception endorsed thereon.

MURRAY, J., did not participate.