DECISION
Before this Court is an appeal from a January 16, 1996 decision of the Zoning Board of Review for the Town of Charlestown (Board). William and Diana Welch (petitioners) seek a reversal of the Board's January 16, 1996 decision denying their application for relief from the Town's dimensional setback requirements for individual sewage disposal systems (ISDS) to be located near wetlands. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
Facts
The petitioners are the record owners of a one hundred foot wide and three hundred foot long parcel of land identified on Assessor's map 4 as lot 94. The land is located in an R3A residentially zoned area for single-family homes. Currently, the lot is undeveloped because the prior owners' house was destroyed by fire.
On August 18, 1995, petitioners filed an application for a dimensional variance with the Board, seeking permission to place the proposed two-bedroom[1] home's ISDS within five feet of a flagged wetland. Waste from the home's bathrooms would be handled by an ISDS that consisted of an electric incinerator toilet and an Elgin In-Drain leach field that would filter the remaining gray water produced by the home in a downward manner and not horizontally toward nearby wetlands. Additionally, the plan included the construction of a polyvinyl lined retaining wall that would be placed about three feet deep and would follow the property's wetland line to the corner of the property. Advertised hearings on the application were held on October 17, 1995, and December 28, 1995, and a decision was rendered by the Board on January 16, 1996. This decision was followed by the Board's rendering a written decision on January 18, 1996.
Various expert witnesses and Mr. Welch spoke at these hearings but no neighborhood opposition was expressed.
The petitioners' first expert witness was Raymond F. Cherenzia (Cherenzia) the president of Cherenzia Associates, LTD. a civil engineering and environmental consulting firm. An expert in engineering, Cherenzia testified that the ISDS system proposed by petitioners had already received Rhode Island Department of Environmental Management (DEM) ISDS and wetlands divisional approval along with CRMC approval. Cherenzia also testified that this system would prevent nitrate infused black water from entering the leach field because the Incinolet toilet system is a closed system. Furthermore, it was Cherenzia's testimony that because of the polyvinyl lined retaining wall any gray water that did enter the leach field would not diffuse out to the wetlands. Lastly, Cherenzia testified that because of a well placement on an adjoining property there was no other possible location for the ISDS system on the lot in question.
The petitioners' second expert witness, Paul J. Shea (Shea), an expert biologist with advanced studies in hydrology and wetlands, testified that the proposed ISDS system had received an "insignificant wetlands alteration" permit from DEM. Furthermore, Shea testified that phosphates which exist in gray water and which would be released into the system's leach field would not be problematic to the wetlands because today's products are designed to have a reduced phosphate level.
The petitioners' third and final witness, Daniel McCloskey (McCloskey), the Welchs' contractor, testified for the limited purpose of addressing Board member Hodshon's concern that at a latter date the Incinolet toilets could be replaced by regular toilets. McCloskey testified that to replace the Incinolet toilets with regular toilets would basically require ripping out the sheet rock in the home, and as a result the near demolition of the home would be required. Lastly, testimony was given by petitioner William Welsh who stated that he had spent so much time and money developing the planned home and its ISDS system because he loved the wetlands and did not want to harm them. He further stated that the wetlands were the reason he purchased the property, and that at the time of purchasing the property he had believed that he would not be required to go before the Board because DEM and CRMC had approved the system. Welch also referred to an informal meeting with a Board member after a public meeting on another petition at which time he was told his plans would not be a problem. Welch, however, was unsure to whom exactly he had talked and when the meeting took place.
Before the Board was a recommendation by the Town's Conservation Commission to deny the petition. Petitioners took exception to several of the Commission's factual determinations and objected to the total lack of experts' opinions supporting certain engineering and biological conclusions made by the Commission. Similarly, Board member Hodshon himself questioned the amount of time that went into the recommendation and at no time did any of the Board members reference or rely on the recommendation.
In its January 18, 1986 decision the Board denied petitioners' requested relief. Thereafter, petitioners filed a timely appeal to this Court asserting that the Board's decision was affected by an erroneous application of the law in that the wrong standard was applied by the Board, and that the Board's findings were clearly erroneous in view of the reliable, probative and substantial evidence before it.
Standard of Review
Superior Court review of a Zoning Board decision is controlled by Rhode Island General Laws 1956 § 45-24-69 (D) (1991 reenactment), which provides in pertinent part:
45-24-69 (D). Appeals — Appeals to superior court
"(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may . . . reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: . . .
(4) Affected by other error of law;
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; . . ."
When reviewing a Zoning Board decision, the superior court ". . . is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Apostolou v. Genovesi, 388 A.2d 821, 825 (R.I. 1978). InApostolou v. Genovesi, the Rhode Island Supreme Court defined substantial evidence as "more than a scintilla but less than a preponderance", Id. at 824; and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 822.
It is undisputed that at the time of petitioners' application the variance they sought, which would allow them to place an ISDS system closer than 100 feet from a wetland, was a request for a dimensional variance, or a "viti variance," See also Garra Realtyv. South Kingstown Zoning Board of Review, 523 A.2d 855, 858 (R.I. 1987) (holding that a request for relief from a town setback requirement for ISDS falls under the Viti doctrine). As such, petitioners were required to prove to the Board "that the hardship that will be suffered by the owner of the subject property, if the dimensional variance is not granted, shall amount to more than a mere inconvenience, or that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief." RIGL §45-24-41 (D)(2) and Bamber v. Zoning Board of Review of Foster,591 A.2d 1220 (1991). More specifically, Charlestown Zoning Ordinance § 218-4 (1994) states that "permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations." Additionally, in granting the "variance, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
(3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based;" See also, Charlestown Zoning Ordinance § 218-23 (F)(2) (1994).
The Town argues that the decision of the Board should be upheld because the Board specifically found that the petitioners' hardship was not suffered due to a unique characteristic of the land but because of the general characteristics of the surrounding area, and that the general character of the area would be altered.
The Board's Decision
The petitioners present two main arguments on appeal. First, petitioners contend that the Board's decision was based on the misapplication of the use variance standard of proof which is an error of law. Additionally, petitioners argue that the Board based its denial of the requested variance upon insufficient evidence.
Section 218-66 of the Charlestown Zoning Ordinance provides that "sewage disposal facilities which are designed to leach fluid wastes into the soil shall be located not less than one hundred (100) feet from the edge of any water body, marsh or swamp or bog within the Town of Charlestown." The petitioners argue that instead of applying the "more than a mere inconvenience" standard the Board denied the requested relief because the requested relief would not uphold the general purposes of the zoning ordinance, and such a grant of relief would be contrary to public interest and welfare. In support of this claim petitioners point out that that the Board's decision doesn't even reference the "more than a mere inconvenience" standard or the "no reasonable alternative" standard. Petitioners also argue that even if the Board applied the "more than a mere inconvenience"/"no reasonable alternative" standard, its decision to deny relief was clearly erroneous because the decision was not supported by any legally competent evidence of record. SalveRegina College v. Zoning Board of Review, 594 A.2d 878 (R.I. 1991).
The Board did in fact find that the granting of the requested variance would not uphold "the general purposes of the ordinance or the comprehensive plan," that such a variance would be "economically and environmentally harmful to the Town," that it was not "in the public interest," that no "compelling" evidence existed to support a 95-foot variance, and that petitioners were seeking a variance due to a "hardship caused by the general characteristics of the surrounding area."
The use of much of this language is very troubling because at no time at all did any member of the Board even mention in passing the "more than a mere inconvenience"/"no reasonable alternative" standard; § 45-24-42 (C) and (D) clearly establish two separate sets of considerations which must be addressed by a petition. The first set of considerations include the basis of the hardship, the possibility of alterations in the general character of the area, and the purposes and intent of the zoning ordinance and the comprehensive plan. The second set of considerations includes the "more than a mere inconvenience" requirement. Thus the Board's decision was based upon the correct legal standard.
The Board's findings, however, on both sets of considerations must be supported by findings of fact and competent evidence of record. The Board has not met this requirement. The record clearly indicates that petitioners were not seeking the variance just because of the general wetlands nature of the area. Rather, it was the uncontroverted testimony of Cherenzia that because the lot was only one hundred feet by three hundred feet, and because of the placement of a water well on an adjoining property, petitioners were not able to relocate the ISDS anywhere else on the property. The Board made no findings of fact to support its position that the hardship was due to the general nature of the area alone. All the evidence illustrates that the reason for the hardship is not the general character of the area but the uniqueness of petitioners' lot size and location of the adjoining well. Similarly, the Board's assertions that such a variance would not uphold the purpose of the comprehensive plan is not supported by the evidence of record or findings of fact. Various members of the Board felt that such a variance would defeat the purpose and intent of the comprehensive plan by allowing increased pollution to enter the wetlands, but this finding of increased pollution is not supported by any evidence of record. Both Cherenzia and Shea testified that increased pollution would not be a problem due to the technology used in the proposed ISDS system. Similarly, while not determinative or binding upon the Board, the DEM finding that insignificant alteration of the wetlands would occur is probative. Significantly, the only evidence of possible wetlands damage in the record are the finding of the Conservation Commission. These findings were not based on any expert testimony at all, and Board member Hodshon specifically questioned the amount of time that went into the preparation of the recommendation.
In their decision, the Board found Shea's testimony vague, but no specific defects in the testimony was given besides one member's conclusion that Shea's testimony was based on an assumption about water use. Additionally, the Board cited Shea and Cherenzia's inability to give guarantees as to what people are going to pour down their drains significant because it meant that pollution of the wetland may occur. Such a conclusion, however, is speculative at best in light of the uncontradicted testimony of both Shea and Cherenzia that the polyvinyl retaining wall would prevent wetland contamination from the home's gray water leach field.
Accordingly, the Board's decision to deny the dimensional relief is not supported by substantial evidence of record.
Conclusion
After review of the entire record, this Court finds that the decision of the Board, while not effected by an error of law, was not supported by substantial evidence. The decision of the Board is reversed, and the variance is hereby granted. Counsel shall submit the appropriate judgment for entry.
[1] The exact number of bathrooms proposed is unclear from the record because Raymond Cherenzia testified that he believed the plan called for one bathroom, while the Welchs' contractor testified to two bathrooms.