DECISION
This is an appeal from a decision of the Zoning Board of Review of the City of Cranston (Board). The plaintiff, Scottish Rite Cathedral, Inc. (Scottish Rite), is appealing the Board's December 12, 1996 decision denying its petition for a special use permit or variance to construct a parking lot on land zoned solely for residential purposes. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The Scottish Rite owns adjacent land, lot 7 and lot 251, in the City of Cranston. The Scottish Rite applied to the Zoning Board of Review of the City of Cranston (Board) for a Special Use Permit and/or variance to construct a parking lot on lot 251. Lot 251 is zoned as "residential A-6" by the City of Cranston. This designation restricts the use of the property to single-family dwellings.
The record reveals the following. Currently, Scottish Rite shares parking with Rhodes on the Pawtuxet (Rhodes) on the rear portion of lot 7. (R. at 19) Both Scottish Rite and Rhodes have an undivided one-half interest in this portion of lot 7. (R. at 19) The front part of lot 7 is owned by Scottish Rite in fee. On this portion of lot 7, Scottish Rite owns an existing building, the Scottish Rite Cathedral. (R. at 12-13) The shared parking arrangement has inconvenienced those attending Scottish Rite events on nights there were large events at Rhodes. (R. at 14) To alleviate the problem, Scottish Rite sought to construct a fifty-two (52) car parking lot on lot 251 which it owned in fee. (R. at 3)
To construct the parking lot, Scottish Rite petitioned the Board on December 11, 1996, under the following sections of Cranston's Zoning Ordinance: § 30-28 (variances), § 30-8 (schedule of uses), and § 30-18 (p) (off-street parking). At the properly advertised hearing, Scottish Rite presented Milton Thoene, Scottish Rite's secretary, and Christopher Duhamel, a professional engineer and land surveyor with ATS Survey, Inc., as witnesses to support constructing the parking lot. Initially, Mr. Thoene testified that Scottish Rite is not a church but rather a charitable organization engaging in many philanthropic activities. (R. at 9-12) Thoene supported this by producing the organization's charter and its 501 (c)(3) designation from the Internal Revenue Service which documents Scottish Rite's status as a philanthropic, charitable organization. (R. at 8-9) (See Exhibit 2.) Subsequently, Mr. Duhamel testified that Scottish Rite was not proposing any change of use to the existing building or the level of use of the building. (R. at 29) Duhamel indicated that the proposed designs would not pose any drainage, traffic, or lighting problems in the surrounding community. (R. at 30-31)
In addition to testimony supporting the parking lot, the Board was presented with a recommendation from the City of Cranston's Planning Commission (Commission). (R. at 3-4) The Commission approved Scottish Rite's application for the parking lot subject to the conditions that a 25' buffer be maintained along the southerly property line, between the parking lot and adjacent residences, and that a 4-5' tall dense evergreen hedge be planted along the southerly parking lot perimeter to screen the parking lot area from adjacent residential properties. (R. at 3-4) These conditions were acceptable to Scottish Rite. (R. at 4)
Four area residents spoke out against Scottish Rite's Application. Gregory Thompson, a member of Scottish Rite, testified that sufficient parking already existed on lot 7. (R. at 39-40) Beatrice McArthur and Michael Sousa both discussed the negative effects prior non-permit work has had on their property. (R. at 57-58 62-63) Stephen Stykos spoke out against the application as denying already limited space for local little leaguers to play ball. (R. at 59-61)
On December 12, 1996, the Board denied Scottish Rite's application. The Board articulated three reasons for denying Scottish Rite's petition. It held that the proposed use was an over-intensive use of lot 251; that Scottish Rite had sufficient parking on lot 7; and that developing a parking lot would be injurious to the abutting property owners. The Scottish Rite filed a timely appeal to this court claiming that it is entitled to a special use permit or variance under the Cranston Zoning Ordinance because it is a philanthropic, nonreligious organization.
 Standard of Review
The Superior Court's review of the Cranston Zoning Board's decision is governed by G.L. 1956 § 45-24-69 (D) which provides that
 "[t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 "(1) In violation of constitutional, statutory, or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve ReginaCollege v. Zoning Board of Review of Newport, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Board of Warwick,122 R.I. 241, 245; 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824-25 (1978)). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings."New England Naturist Ass'n v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Ass'n ofFirefighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Special Use Permit and Variance
The Cranston Zoning Board of Review has the power to issue a special use permit, or a variance from the local zoning ordinance. Bamber v. Zoning Board of Review of Foster,591 A.2d 1220, 1223 (R.I. 1991). The power to grant either a special use permit or a variance emanates from the Zoning Enabling Act of 1991. G.L. 1956 §§ 45-24-57 (A) (5), 45-24-57 (A) (4). Each form of relief presents the applicant with a different standard to satisfy.
A special use permit may be granted by a zoning ordinance when the ordinance specifies the particular uses, describes the conditions and procedures for the special use categories, establishes criteria for special use permits that conform to the ordinance, and complies with the constitutional due process requirements. G.L. 1956 § 45-24-42. Thus, a petitioner seeking a special use permit "must show only that neither the proposed use nor its location on the property would have a detrimental impact upon the public's health, safety, welfare, or morals." Bamber, 591 A.2d at 1223-24.
A use variance may be granted when the zoning board grants "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." G.L. 1956 § 45-24-31
(61) (a). Unlike the petitioner seeking a special use permit, the petitioner for a variance must satisfy a stricter standard. The party applying for the variance must demonstrate that the unnecessary hardship results because of the unique characteristics of the land and not the general characteristics of the surrounding area. Additionally, the petitioning party must show that the current hardship is not the result of his or her prior action, that the variance does not alter the general character of the surrounding area, and that the relief sought is the least relief necessary. G.L. 1956 § 45-24-41 (C). In short, to obtain a "true" variance, the petitioner "must satisfy the `unnecessary hardship' standard of § 45-24-19 (C)[1], which requires a `showing of deprivation of all beneficial use of property.'" Bamber, 591 A.2d at 1223. Other than the power to grant variances, the Cranston Zoning Board has only those powers conferred upon it by the local zoning ordinance. Colello v.Zoning Board of Review of Cranston, 250 A.2d 520 (R.I. 1969).
Initially, Scottish Rite sought a special use permit to build a parking lot on A-6 residential property. The Scottish Rite argued that it is eligible for a special use permit because it is a philanthropic organization. (R. at 6) In determining if a special use permit should be granted, the Board looks at Chapter 30, § 49 (n) of the zoning ordinance which states that
 "[t]he zoning board of review shall have the power in appropriate cases and subject to appropriate conditions and safeguards to issue special permits as authorized by this chapter in harmony with its general purpose and intent. In issuing such permits, the board shall determine that the use meets the following requirements:
 "It shall be compatible with its surroundings.
 "It shall not be injurious, obnoxious, or offensive to the neighborhood.
 "It shall not hinder the future development of the city.
 "It shall promote the general welfare of the city." (Emphasis added.)
The Cranston Zoning Ordinance clearly enumerates those special uses that are authorized by the ordinance. (R. at 6) Special use permits are granted for philanthropic, religious institutions other than schools and churches, hospitals or sanitariums, swimming pools, tennis courts, yacht clubs, cemeteries, and golf clubs in various zones. (Ch. 30, § 15, Cranston Zoning Ordinance). However, § 15 of Chapter 30 does not allow special use permits to construct parking lots. When the language of an ordinance such as this is clear and certain, "there is nothing left for interpretation and the ordinance must be interpreted literally." Mongony v. Bevilacqua, 432 A.2d 661
(R.I. 1981).
In interpreting the Cranston Zoning Ordinance, the Rhode Island Supreme Court has held that if the use is not specifically authorized by the city council by way of special permit, the board lacks authority to permit the activity. McNalley v. ZoningBoard of Review of Cranston, 102 R.I. 417; 230 A.2d 880 (1967) (holding that horse riding was not authorized by way of a special permit because it was not specifically classified as a permissible special use permit). Furthermore, the court earlier addressed the issue of special use permit applications for parking lots in residentially zoned areas in the City of Cranston. Monopoli v. Zoning Board of Review of Cranston,102 R.I. 576; 232 A.2d 355 (1967). In that case the court clearly held that there is not "any authority given by the city council to the board to permit the establishment of a parking lot in areas of the city which the council has zoned residential." Id. at 356.
In this case, Chapter 30, § 26 (b) states that
 "[t]he off-street parking spaces required by this chapter shall be on the same lot as the structure or use they are intended to serve. The zoning board of review may grant exceptions to allow provision of the required spaces on a separate lot or lots within a radius of two hundred feet in C-1, C-2 and C-3 districts; and a radius of eight hundred feet in C-5, M-1, and M-2 districts measured from the lot line of the principal use."
This section clearly omits any reference to any residentially zoned areas. Off-street parking is governed by § 26 of the Cranston Zoning Ordinance. This section omits any allowances for exceptions to A-6 residential property. By specifying zones C-1, C-2, C-3, C-5, M-1, and M-2 the city council, by implication, intended to exclude A-6 residential property from § 26 (b).Terrano v. Department of Corrections, 572 A.2d 1181, 1183 (1990);Murphy v. Murphy, 471 A.2d 619, 622 (1989). Again, the ordinance is clear and certain and must be interpreted literally. SeeMongony, 432 A.2d at 663. Therefore, Scottish Rite is not eligible for a special use permit to build a parking lot on residentially zoned property.
Alternatively, Scottish Rite sought a variance from the Board. Cranston's Zoning Ordinance regarding variances virtually mirrors § 45-24-41 of the Zoning Enabling Act of 1991. Where a literal enforcement of chapter 30, § 49 (p) will result in unnecessary hardship, the Board must determine or consider the following:
 "If the appellant complies with the provisions of this chapter, he can make no reasonable use of his property.
 "The hardship results from the application of this chapter to the appellant's property. No hardship that is not the direct result of application of this chapter shall be considered. * * *
 "The hardship shall be peculiar to the applicant's property. Such hardships shall arise only from special or peculiar site conditions or features of the land in question. Conditions which exist over a wider area than the lot in question or its immediate surroundings, so that appropriate action would normally arise from the legislative body of the city as an amendment to this chapter, shall not be considered."
The Scottish Rite's burden was to demonstrate that denial of variance relief would constitute an "unnecessary hardship." The record demonstrates that it did not present any evidence that lot 251 is void of all beneficial use. Throughout the Board hearing, Scottish Rite spoke of the inconvenience of not having a parking lot on evenings it shared parking with Rhodes. (R. at 14) There is no evidence that this was a normal occurrence. In fact, one witness, a Scottish Rite member, testified that these parking problems rarely occurred. (R. at 39-40) Though disputed, evidence before the Board demonstrated that there were other parking alternatives for Scottish Rite behind its building. (R. at 39) The record evidences that Scottish Rite did not demonstrate to the Board a deprivation of all beneficial use. Furthermore, the evidence reveals that the existing conditions will affect the surrounding community; therefore, as the last paragraph of § 49 (p) suggests, the proper alternative for Scottish Rite would be to seek rezoning of the property in question.
After review of the entire record, this court finds that the decision of the Board is supported by reliable, substantial, and probative evidence. Substantial rights of the petitioner have not been prejudiced. This court finds that there is no violation of constitutional, statutory, or ordinance provisions, no excess of authority granted to the Board by statute or ordinance, no unlawful procedure, or no other error of law. Furthermore, the Board's actions were not arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgement for entry.
[1] § 45-24-19 (c) is superceeded by § 45-24-57 (A) (4).