DECISION
This is an appeal from a decision of the City of Woonsocket Zoning Board of Review (the Board). Woonsocket Head Start Child Development Assoc. and Imperial Electric Co., Inc. (appellants) seek reversal of the Board's decision of April 27, 1998, denying their request for a special use permit. Jurisdiction of this Court is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The appellants filed an application for a special use permit with the Board on March 3, 1998. The property in question is located at 204 Warwick Street (a/k/a 204 Cranston Street), in the City of Woonsocket, and is designated as Assessors Plat 18, Lot 11. The property is situated mainly in a R-2 (single family residential) district, with a portion of the property located in a R-3 (single and two family residential) district. The current owner, Imperial Electric Co., Inc., had previously used the property in its business as an electrical supply retailer and as a warehouse. Imperial and Head Start entered into a purchase and sale agreement whereby Head Start would purchase the property contingent upon their obtaining a special use permit. A special use permit was sought to enable Head Start to establish an early care and educational facility for children on the property. Head Start intended to add an addition onto the existing building and do some interior renovations.
At a properly advertised hearing on March 23, 1998, the Woonsocket Zoning Board of Review heard the applicants' application for a special use permit regarding the property in question. At this hearing, the Board heard testimony from the President of Imperial Electric, Ernest L'Heureax, and the Executive Director of Head Start, Karen Bouchard. Mr. L'Heureax testified traffic congestion would not be worsened given the fact that when his company used the building it "received deliveries from at least ten (10) sixty (60) foot tractor trailers per week, that contractors came to the building daily, that Imperial employed seventeen (17) employees . . . and customers came into the building to use its showrooms." Record at 183. Ms. Bouchard then testified about the number of children that would be present daily and the manner of their transportation to the facility, either by bus or by their parents. See Record at 184. The matter was then tabled and was heard again on April 23, 1998.
At the meeting on April 23, 1998, the Board heard testimony from the applicants' three expert witnesses. Robert K. Baker, a professional engineer, testified that he had designed the heating and ventilation systems for the proposed addition and that in his opinion, the noise that would result would be no louder than the noise of a home air conditioner and that the odors from the roof exhaust would be normal kitchen odors like those from a residential home. See Record at 192, 193. James P. Cronan, III testified that he was the engineer who prepared the traffic report and that according to the findings of his report, there would be no detrimental impact on traffic, there was sufficient site distance, and that Park Avenue could accommodate the proposed increase in traffic. See Record at 193. Further, Leo Lapierre, an expert real estate appraiser, testified that he had visited the site and that in his expert opinion, the operation of the Head Start facility would not cause a devaluation of the surrounding property. See Record at 195. In regard to the testimony of all three expert witnesses, there was no expert evidence offered to contradict their testimony and the remonstrants consisted of neighbors who indicated that they had concerns about an increase in traffic, a decrease in property values, drainage problems, and an increase in noise and fumes.
At the conclusion of the hearing, the application was again tabled until April 27, 1998, in order to allow the Board the opportunity to further review the application. On April 27, 1998, all testimony was closed, and the Board voted to deny the application.
After the hearing, the Board submitted a letter, dated May 4, 1998, denying the applicants' request for a special use permit. In this letter, the Board stated that the reason for the denial was a finding by the Board that the proposed facility "was not in harmony with the intent and purpose of the Zoning Ordinance." The Board further concluded that the facility would have a "detrimental effect on the neighborhood, particularly because of increased traffic, and [was] not reasonably necessary for the convenience and welfare of the public." The appellants filed a timely appeal from the Board's decision to this Court on May 22, 1998.
 Standard of Review
This Court possesses appellate review jurisdiction of a zoning board of review decision pursuant to R.I.G.L. §45-24-69 (D), that states
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, when reviewing the decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the finding of the zoning board of review. Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. ZoningBd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, No. 96-224-M.P., Slip Op. at 4. (R.I., filed Jan. 29, 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance."(Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping CenterAssociates v. Chase, 574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quotingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 The Granting of a Special Use Permit
The purpose of the special use permit in the context of zoning is to establish within the ordinance "conditionally permitted" uses. Nani v. Zoning Board of Review, 104 R.I. 150,242 A.2d 403 (1968). An application for a special permit cannot be granted absent a specific provision in the local ordinance authorizing the proposed use by such special permit. The fact that a particular use is allowed in a zoning district by special permit means that the municipality has already determined that it is an appropriate use for the district and as such, it cannot be excluded by a decision of the zoning board unless the standards for such special permit are not satisfied. Perron v. Zoning Boardof Review of Burrillville, 117 R.I. 571, 369 A.2d 638 (1977). Where the conditions and requirements are satisfied, it is an abuse of discretion to deny the requested special use permit. SeeSalve Regina College v. Zoning Board of Review of Newport,594 A.2d 878 (R.I. 1991).
Section 4.5-6 of the Woonsocket Zoning Ordinances specifically provides for a nonprofit educational institution serving young children in the zoning district where the property is located by a special use permit. Section 15-8.2 of the City of Woonsocket Zoning Ordinances sets out the relevant standard for the granting of a special use permit for the type of facility Head Start wishes to establish. According to this section,
 "[t]he following standards shall be applied in the consideration of special use permits for uses other than accessory family dwelling units:
 (1) That the special use shall be in harmony with the general purpose and intent of this ordinance;
 (2) That the special use permit is reasonably necessary for the convenience or welfare of the public;
 (3) That all appropriate conditions and safeguards are included in the special use permit in the form of stipulations; and
 (4) That in the case of a special use on a lot which adjoins one (1) or more lots in a residential zone, a fence of solid appearance or approved evergreen hedge, having a height of not less than six (6) feet, shall be erected and maintained between such area and the property in the residential district. The zoning board of review may waive this requirement."
According to the ordinance, the appellants needed to demonstrate that neither their proposed use nor its location would have a detrimental effect upon the health, safety, welfare or morals of the community. See Section 15-8.2 of the Woonsocket Zoning Ordinances, Toohey v. Kilday, 415 A.2d 732, 736 (R.I. 1980). In support of its application, the appellants offered the testimony of three expert witnesses. These experts testified that the proposed use and location would not have a detrimental impact on traffic conditions, not result in a devaluation in property values, or increase noise or odors in the neighborhood. There was no other expert testimony offered to rebut the findings of the appellants' experts and the remonstrants offered only lay opinion testimony from neighbors.
Appellants argue that the Board erred in its reliance of lay witness testimony offered by the neighbors opposed to the facility since, based upon the holdings in Toohey and SalveRegina College v. Zoning Board of Review of the City of Newport,594 A.2d 878, 882 (R.I. 1991), such testimony has no probative force. The Board argues that Toohey is inapplicable to the matter at hand since that case concerned a request for a variance and involved no expert testimony. The Board further contends that the testimony of individuals who are familiar with the neighborhood is probative and, as such, the Board may hear testimony from lay persons who are familiar with the area.
In Toohey, the Board relied on the testimony of objecting neighbors, rather than the petitioner's expert, in its decision to deny the petitioners' application for a variance or a special exception. Toohey, 415 A.2d at 734. With respect to the issue of lay witnesses testimony, the Supreme Court held the testimony of lay witnesses concerning adverse traffic conditions and neighboring property values alone cannot serve as a valid basis for the denial of a special use permit. Id. at 738. It is well-settled law "that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Toohey, 415 A.2d at 737; Seealso Salve Regina College, 594 A.2d at 882; Smith v. Zoning Boardof Review of Warwick, 103 R.I. 328, 334 (1968). Furthermore, this holding in Toohey is applicable to lay witness testimony in all zoning matters.
The record reveals that the lay witness testimony offered by the remonstrants, upon which the Board relied, lacked probative force. Furthermore, the record reveals that the uncontradicted testimony of the applicants' three experts witnesses demonstrated that the proposed child care and educational facility was in harmony with the ordinance and would not be inimical to the health, safety or welfare of the community. The Board had before it probative evidence from three experts that the operation of the Head Start facility would not cause a devaluation of the surrounding property, that the noise which would result would be no louder than the noise of a home air conditioner, and there would be no detrimental impact on traffic. See Record at 192, 193, 195. Thus, the Board's finding that the educational facility would increase traffic and was not reasonably necessary for the convenience and welfare of the public was not supported by the substantial, probative evidence of the record.
After review of the entire record, this Court finds that the decision of the Woonsocket Zoning Board of Review was not supported by the competent evidence of the record. Substantial rights of the appellants have been prejudiced. Accordingly, the decision of the Woonsocket Zoning Board of Review is reversed.
Counsel shall prepare the appropriate order.