DECISION
In the instant matter, Plaintiff appeals a decision of the Zoning Board of Review for the town of Little Compton dismissing Plaintiff's request for a regulatory variance. The Board dismissed the action upon a finding that the Plaintiff's request for relief should have been sought under Section 14-5.9 (c)11 of the Zoning Ordinances. Tbis Court now reverses the Board's decision
 Facts/Travel
Bluff Head Corporation owns an existing structure on Lot 432, Assessor's Plat 9, in Little Compton, Rhode Island. Plaintiff'sMemorandum of Law at 1. The district in which the property is located is a business district. Plaintiff filed a petition with the Zoning Board of Review in Little Compton, seeking permission to add a second story to the existing building. Id. This addition was slated for residential purposes, a permitted use within a business distinct. Accordingly, Plaintiff sought relief from Sections 14-2.5d[1] and 14-2.7 (b)4).[2]
At the hearing, the Town moved to dismiss Plaintiff's petition on the grounds that since Lot 432 was both non-conforming and located in a flood zone, the plaintiff should have applied for relief under Section 14-5-9 (c)(11) of the Zoning Ordinance.Plaintiff's Memorandum of Law at 1. The Motion to Dismiss was granted. It is from this decision that Plaintiff now appeals.
 Standard of Review
Superior Court review of a zoning board decision is controlled by R.I.G.L. 1956 (1991 Reenactment) § 45-24-69
(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 388 Aid 824-25). The Court should examine the entire record to determine whether there is substantial evidence to support the Board's decision. Salve Regina College v. Zoning Board, 594 A.2d 878
(R.I. 1991).
 Non-Conforming Use
The Little Compton Zoning Ordinances, in addition to generally defining "nonconformance," further further sub-categories the definition: nonconformance by use and nonconformance by dimension.
 Section 14-2.1 (a) Definitions. Nonconformance. A nonconformance is a building, structure, sign, or parcel of land, or use thereof, which was lawfully established at the time of the adoption or amendment of this Zoning Chapter. and not in conformity with the provisions of such ordinance or amendment.
 (D) nonconforming by dimension. A lawfully established building, structure, or parcel of land not in compliance with the dimensional regulations of this chapter is nonconforming by dimension.
 (B) substandard lot of record. A lawfully established lot that is not in compliance with the dimensional regulations of the Zoning Chapter, including, but not limited to, those regulations for minimum lot size, lot width and lot frontage, also known as a substandard lot of record, is also nonconforming by dimension.
The provisions of the ordinance which refer, in particular to the enlargement or alteration of nonconforming property, generally differentiate between "nonconforming" by use or dimension. For example, § 14-2.5 specifically governs buildings or structures nonconforming by dimension:
 (D) Addition and Enlargement. A building or structure nonconforming by dimension may be added to or enlarged only its such addition or enlargement is not more than fifty (50) percent of the original building or structure, and only if such addition or enlargement conforms to all of the dimensional regulations of the zone in which the building or structure is located. (Emphasis added)
It was from this section, in part, that the Plaintiff sought relief.
At the hearing before the Zoning Board, and again before this Court, the Town argued that because the subject property is both non-conforming and located in a flood zone, the Plaintiff was also required to seek relief under Section 14-5.9 (c) 11 of the Ordinance. Section 14-5.9 (c)11 states that a non-conforming use
shall not be enlarged or extended when it is located in a flood zone. The Town also argued that section 14-2.2 applies. This section, entitled "Most Restrictive Regulations to Apply," provides:
 "A building, structure, or parcel of land nonconforming by more than one (1) factor, such as by use, dimension, area or parking, shall comply with all applicable regulations of this sections. Where regulations conflict, the most restrictive regulations shall apply." (Emphasis added)
Since this property was both nonconforming by dimension and located in a flood zone, the Town argued that the most restrictive regulations would be requiring application for relief under § 14-5.9 (c)11.
In response, Plaintiff relied on the distinction drawn between a non-conforming use and a piece of property or structure
which is non-conforming because it fails to meet a dimensional
requirement of the zoning ordinance. Plaintiff argued that the sections of the ordinance cited by the Defendant should be interpreted to apply only to non-conforming uses and not to those properties where dimensional aspects are at issue.
The zoning ordinances distinguish between "nonconforming" by use or dimension. Where no distinction is intended, the ordinance simply uses the term nonconformance. As previously discussed, section 14-5.9 (c) addresses nonconforming uses. The subject property, while nonconforming, is only so with regards to dimension. This fact also impacts on the applicability of Section 14-2.2 because this section applies only to property which does not conform by more than one factor, such as use, dimension, area or parking. Since the nonconformance in question is one of dimension alone, it falls outside the purview of this section. The fact that this property is in a flood zone, does not qualify as a nonconformance.
Accordingly, this Court finds that the decision of the Zoning Board was clearly erroneous in light of the evidence and should be reversed. The parties will prepare and enter the appropriate judgment.
[1] Addition and Enlargement. A building or structure nonconforming by dimension may be added to or enlarged only if such addition or enlargement is not more than fifty (50) percent of the original building or structure, and only if such addition or enlargement conforms to all of the dimensional regulations of the zone in which the building or structure is located.
[2] Use of Substandard Lots of Record. A lawfully established lot that is nonconforming with the dimensional regulations of this chapter, also known as a substandard lot of record may be used for any use permitted in the district provided that all other requirements of this chapter are met, except that the required side, front and rear yard depths and the maximum lot coverage for a substandard lot of record may be reduced to the following.
 4. Maximum lot coverage — shall be ten (10) percent of the lot area by all structures; but may be expanded up to a total of seven hundred fifty (730) square feet of lot coverage, provided that the total habitable floor space therein shall not exceed seven hundred fifty (750) square feet.