DECISION
This matter is before the court on appeal from a decision of the Town of Middletown Zoning Board of Review. The plaintiffs seek reversal of the Zoning Board's decision granting Mr. Pasehoal a dimensional variance in order to build a 3500 square foot building. This Court has jurisdiction pursuant to R.I.G.L. 1956 (1991 Reenactment) § 45-24-69.
Defendant, Paschoal, owns the subject property which is sandwiched between Coddington Highway and Hart Street in Middletown, Rhode Island. While this property is also bordered on the other two sides by residences, it sits in a General Business zoning district.
Because of the unique characteristics of this property, two front yards bordering main streets and two yards bordered by residences, defendant Paschoal applied for "a variance from Sections 602, 701, 1301B and 1301D, to construct a 50 by 70 foot one story building, with a front yard setback of 20 feet where 50 feet is required, and parking up to the property lines on the east, west and south sides." June 23, 1998,Transcript at 3. Additionally, he requested a "Special Use Permit from Article 6, Section 602, to permit the operation of an automotive repair service." Id.
The Middletown Zoning Board of Review (Board) heard these requests and objections from various neighbors at a hearing held June 23, 1998. Mr. Paschoal testified that 2000 square feet of the proposed 3500 square foot building would be an auto repair business.[1] The main business of this repair shop would consist of "tune-ups, oil and filter, Rhode Island inspection, [and] exhaust work." Transcript, 3.
The Board members generally, but John West in particular, were concerned about the safety of a business abutting what was described as a sharp decline. The members discussed the propriety of building a fence, guardrail or wall in order to protect citizens from slipping over the bill.
 Mr. West: "I think the use of the property is a reasonable on; okay, but I think the thing that concerns me, and again, it's just that topo that concerns me. ...And my only concern is that when you go to use this piece of property where you've got that kind of topo, where you're kind of cut in the side of the hill there, and now you're really cutting into, you're backing up to a residential area, that there is some provisions or understanding for safety in terms of that hill, guardrails and fences."
 Mr. Palurubo (defendant's attorney): "Well I think it's a legitimate concern because of the safely, in fact we have talked about that the last few days, obviously he's aware of it, because God forbid if somebody does drive and just keeps on going. So if the Board would prefer, Mr. Chairman, that we try to provide some more detail, we would certainly be willing to do that."
It was agreed that more detailed, well engineered plans were needed in order to resolve this concern but the hearing continued so that the abutters could voice their opinions. The Board then heard the objections of several of Mr. Paschoal's neighbors. Bill Lobske testified that he is:
 "Basically against putting an auto repair shop on that lot because it's a very small lot. And I think the point that has been made here that it's going to back up right to Hart Street. If you build a big fence, this is a residential neighborhood, and we've all spent a lot of money on our houses trying to make a better place to live for ourselves, and we're going to have some kind of wall built right up to Hart Street, I just think it's going to be a downgrade to the neighborhood. And I'm also worried about the kids, there's a lot of kids that play in the street."
Kevin Chamberlin who lives at 10 Hart Street, directly behind the subject property. Mr. Chamberlin testified that he was worried about chemicals, oil, gasoline, smells, noise and lights at night. Transcript, 27. There were several other neighbors who also chose to object to Mr. Paschoal's proposed auto repair building and their testimony is part of the record reviewed by this Court. The hearing was then continued until a later date and a second hearing was held October 27, 1998.
At this second hearing, Mr. Paschoal withdrew his request for a special use permit but continued to seek the dimensional variance. Mr. Paschoal's attorney explained:
 "We've carefully considered the concerns of the neighbors, with whom I might add, I believe Mr. Paschoal has enjoyed a very good relationship with over the years. And at this point, Mr. Chairman, and members of the Board, we are prepared to withdraw the petition for Special Use Permit requesting the auto repair garage, the auto repair facility, so that if the Board sees fit to allow us to withdraw that part of our request, then we would only be seeking the regulatory variances to permit the construction of this building on this property, which would be devoted to only those uses that would be permitted by right in this zoning district... And I think that, according to my notes, addresses most if not all the concerns that were expressed by the neighbors at the last hearing." October 27. 1998 Transcript, 5.
 *** [W]e're looking to construct a 3500 square foot building. And I respectfully submit that given the setback, the front yard and rear yard setback requirements in this district of 50 feet, 50 feet front, 50 feet back, obviously you couldn't construct a building on this property unless you got a regulatory variance because it's only got a depth of 95 feet so you couldn't meet the front yard and the rear yard without a variance...
 And we're also asking because of the size of the configuration of the lot, for variances to allow the parking, the off-street parking to... be closer than 10 feet to the property lines, to the side property lines." Id.
Mr. Paschoal's neighbors were also present at this second hearing to voice a different set of concerns. The objectors offered Mr. Peter Merritt, a real estate expert to testify on their behalf Mr. Merritt was asked "If the Board grants the relief for setbacks on the parking space, what impact would that have if any on the neighbors?" To this question, Mr. Merritt responded, "It's a difficult decision for the Board. This is clearly a site that there is a need for relief; because as you've indicated, that if you apply all the dimensional standards to this lot, than it is not developable under any type of use."
Mr. Merritt also testified that:
 "In the context of land uses, when you have the interaction between commercial and residential, I think you have to make those decisions based on, one, the existing character of the neighborhood, and two, the spirit of the ordinance. . . . Any time that a commercial use abuts a residential use there is a requirement for a buffer between the land use on the commercial property and the abutting residential use. Clearly the purpose of that requirement in the ordinance is to provide a measure of protection to the residential use. . . . So the point that I would make to you is that in this case, to abridge that standard for a buffer between the commercial use being proposed and the residential use that exists, is I believe a serious consequence." October Transcript, 43-44.
Mr. Merritt went on to give his reasons for his opinion. The Board members spent considerable time questioning him regarding both his reasons and his conclusions. At the conclusion of the hearing, the Board voted unanimously to grant defendant Paschoal's request for the dimensional variance but they imposed certain conditions. See Transcript
76-91. Plaintiffs now challenge the Board's decision.
This Court possesses appellate review jurisdiction of the Zoning Board's decision pursuant to (G.L. 1956 (1991 Reenactment) § 45-24-69:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
A dimensional variance is the "[p]ermission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of' the subject property unless granted the requested relief from the dimensional regulations." G.L. 1956 (1991 Reenactment) § 45-24-31(61)(b). The essential function of the Zoning Board is to weigh the evidence presented at the hearing, and it has the discretion to either accept or reject any or all of the evidence. Bellevue ShoppingCtr. Assoc. v. Chase, 574 A.2d 760, 764 (R.I. 1990).
This Court must examine and review the entire record to determine whether substantial evidence exists to support the findings of the Zoning Board. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Caswell v. GeorgeSherman Sand and Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). Furthermore, this Court may not substitute its judgment for that of the Zoning Board if it can "conscientiously find that the board's decision was supported by substantial evidence in the whole record." Apostolou,
120 R.I. at 507, 388 A.2d at 825.
As recognized by objector's own expert, a dimensional variance is needed in order for defendant Paschoal to make use of his properly because "of the unique circumstances of, one, the fact that it is a relatively small sized parcel, approximately 14,000 square feet of land" and because, "the commercial zoning district extends up to what would be the west end of the subject property." October Transcript, 42. The plaintiffs contend, however, that 1) the applicant failed to meet his burden of proof on the least relief necessary standard; 2) the applicant failed to prove that a denial of all four variances would amount to more than a mere inconvenience; and 3) the Board violated the notice requirement when it proceeded on the single petition for a dimensional variance.
Regarding plaintiffs' first two arguments, the record indicates that the Board gave both of these issues serious and deliberate consideration. It is undisputed that without a variance, Mr. Paschoal would not be allowed to build anything on this particular lot given the measurements and zoning requirements. This deprivation certainly meets the "more than an inconvenience" standard. However, though the Board acknowledged the hardship facing defendant Paschoal, in granting the variances, they also imposed the following requirements for the protection and consideration of the abutters:
 1. Paschoal must maintain a 5' landscaped buffer on each side and install a 6' high stockade fence if desired by the abutting neighbors; 2. Paschoal must reduce the size of his building if required in order to satisfy the aforementioned requirement; 3. Paschoal is prohibited from using the building for a restaurant or auto repair.
It is this Court's opinion that the record amply demonstrates that the Board acted reasonably and realistically in granting Paschoal's request
Finally, the Court finds no merit in the plaintiffs last argument regarding insufficient notice. Plaintiffs state, "since the second hearing was a continuation of the first, it was reasonable for the neighbors to believe that the auto repair shop was the main issue." In zoning matters, just as in other legal proceedings, notice is a jurisdictional prerequisite. It is purposed upon affording those having an interest an opportunity to present facts which might shed light on the issue before the board, Perrier v. Board of Appeals, 86 R.I. 138, 144,134 A.2d 141, 144 (R.I. 1957), and upon assisting "the board to do substantial justice to an applicant while preserving the spirit of the ordinance under consideration." Mello v. Zoning Board of Review,94 R.I. 43, 49-50, 177 A.2d 533, 536 (R.I. 1962). A proper fulfillment of those purposes demands' * * * notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 314 (1950).
In this case, the objectors received proper and adequate notice of the first hearing. The objectors were granted more than adequate time to voice their concerns and ask questions and to their credit, they took advantage of that opportunity. At the end of this first meeting the Board clarified the fact that there were two issues to be addressed in this matter.
 Mr. West: "Come back here [for the second hearing] because... There are two issues here, one which is in a sense a matter of right, to put some kind of a building on that property. And then there's a second issue, how to use that building, so we just don't have one decision to make.... you should be here if you've got these points of view to bring, because there's two different petitions to be acted on." June Transcript, 37.
After reviewing the entire record, including documents, exhibits, memoranda and transcripts, this Court is satisfied that the Zoning Board had competent evidence before it to grant Mr. Paschoal's request for a dimensional variance. Accordingly, the plaintiffs request for reversal is denied and the Zoning Board decision, affirmed.
[1] The remaining 1500 square fret had not yet been designated.